IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIE SIMPSON,

                  Plaintiff,

v.

SARA MASON, DIANE ESSER,
SHAWN GALLINGER, C.O. GODFREY,
TRAVIS PARR, SGT. PRIMMER,
CAPTAIN FLANNERY, GARY BOUGHTON,
and JOHN DOE GUARDS,

                  Defendants.

OPINION & ORDER

13-cv-776-jdp

---

      In this case, plaintiff Willie Simpson, an inmate currently housed at the Waupun

Correctional Institution, is proceeding on claims that defendant prison officials at the Wisconsin

Secure Program Facility assaulted him twice and continued to threaten to kill him. Currently

before the court are several motions, chief among them plaintiff's motions for leave to amend

the complaint and for preliminary injunctive relief and defendants' motion for partial summary

judgment based on plaintiff's failure to exhaust his administrative remedies. After considering

the parties' submissions, I will allow plaintiff to amend his complaint and screen his new claims

as well as expand the scope of his claims with regard the allegations he has already raised.  I will

largely deny plaintiff's motion for preliminary injunctive relief but give him a chance to explain

whether he faces the possibility of being returned to the Wisconsin Secure Program Facility. I

will grant defendants' motion for partial summary judgment on exhaustion grounds. I will also

address a variety of other motions filed by the parties.

ANALYSIS

## A.   Second amended complaint/Doe defendants

In a December 9, 2013 order, the court stated that plaintiff's original complaint, Dkt. 1, raised claims that belonged in several different lawsuits. Dkt. 3. Plaintiff responded by filing three proposed amended complaints. Dkts. 4, 9, 13. The court directed him to choose which one of those lawsuits he wished to pursue in the present action. Dkt. 14. Plaintiff chose the amended complaint raising claims about being repeatedly assaulted by correctional officers at the Wisconsin Secure Program Facility (WSPF), Dkt. 9, so that complaint became the operative pleading.

In screening the amended complaint, the court allowed plaintiff to proceed on claims against the above-captioned defendants, including "John Doe" correctional officers involved in the attacks and threats, and stated as follows:

> The matter of identifying the Doe defendants will be addressed at a preliminary pretrial conference, which will be held before Magistrate Judge Stephen Crocker after defendants have answered the complaint. After plaintiff works with defendants to identify the Doe defendants, plaintiff will amend his complaint to include their proper identities and obtain service of process upon those defendants.

Dkt. 23, at 7.

Before defendants answered or the preliminary pretrial conference was held, plaintiff filed a motion to amend his complaint along with a proposed second amended complaint, in which he adds new claims and defendants but did not identify the Doe defendants. Following the answer, Magistrate Judge Crocker held the preliminary pretrial conference and issued an order detailing the schedule for the remainder of the case. Dkt. 43. In particular, the order set out the process plaintiff would use to obtain discovery from defendants in order to amend his

2

complaint to identity the Doe defendants. That order explained what would be included in the amended complaint naming the Doe defendants:

> All that plaintiff needs to do in this document is tell the court the actual identities of his Doe defendants. If there is more than one Doe, then plaintiff must be very clear as to which Doe is which named person. Plaintiff does not need to—in fact is not allowed to—make any other changes to his complaint without first asking for and receiving permission from the court.

Dkt. 43, at 4. Plaintiff responded by filing a motion to reconsider the preliminary pretrial conference order, arguing that Magistrate Judge Crocker's language above contradicts the court's screening order "granting [plaintiff] permission to amend governed by Rule 15, without giving justifiable reason."[1] Dkt. 50, at 1. I understand plaintiff to be arguing that the preliminary pretrial conference order foreclosed his ability to amend his complaint in substantive ways (as he is attempting to do in his second amended complaint) and that his second amended complaint must be allowed under Federal Rule of Civil Procedure 15 because that rule allows a plaintiff to amend his complaint once "as a Matter of Course." Fed. R. Civ. P. 15(a)(1).

Plaintiff is mistaken that the screening order discusses his right to file an amended complaint outside of the purpose of identifying the Doe defendants. Nor is the preliminary pretrial conference order language quoted above meant to foreclose substantive amendments. That issue is explicitly addressed elsewhere in the order, which states that further amendments may be made only with leave of the court. Dkt. 43, at 3. This language correctly describes the standard applicable to plaintiff's second amended complaint; although Rule 15 allows a plaintiff to amend his complaint once as a matter of course in certain circumstances, plaintiff has already amended his complaint once. *See* Dkt. 9. Because there is nothing incorrect about Magistrate Judge Crocker's order, I will deny plaintiff's motion for reconsideration.

---

[1] Plaintiff labels his motion as one to amend judgment under Federal Rule of Civil Procedure Rule 59(e), but because the preliminary pretrial conference order is not a judgment, his motion is more properly thought of as a motion for reconsideration of that order.

Plaintiff's amended complaint must be considered under Rule 15(a)(2), which states that the court "should freely give leave [to amend] when justice so requires." I conclude that it is appropriate to allow plaintiff to amend his complaint. I understand plaintiff to be adding a number of substantive claims and defendants to the claims on which he is already proceeding.

As for identifying the Doe defendants, plaintiff filed a motion for an extension of time to submit another amended complaint doing so, Dkt. 57, but I will deny that motion as unnecessary because in his declaration supporting his preliminary injunction motion, plaintiff identifies the following additional defendants:

> On 8-12-2013 . . . Theran Gage, Chad Winger, Christopher Foley, Ronald Torgerson, and Lucas Runice took action administering force . . . ."
>
> Between 7-25-2013 and 10-2-2014 WSPF prison officials Foley . . . Michael Sherman, Michael Cockcroft . . . Leverne Wallace, Mathew Scullion, Keith Weigel, CO Kersten . . . have routinely come to my cell taunting and threatening plaintiff stating the use of electronic taser on plaintiff on 7-25-2013 and 8-12-2013 fried plaintiff like a chicken and its not over they are going to kill plaintiff.

Dkt. 84, at 5.[2] There is no need for plaintiff to submit a third amended complaint for the sole purpose of inserting these names. The state will be given an opportunity to inform the court whether it will be representing these defendants and submit an answer to the second amended complaint on their behalf addressing the claims discussed below in the portion of this opinion screening the second amended complaint.

---

[2] In plaintiff's motion for extension of time to file a motion for summary judgment, Dkt. 96, plaintiff states that he "has been unable to discover the John Doe defendants" because he has been unable to obtain video evidence of the August 12, 2013 incident. Although this suggests that he is not completely certain of the identities of the staff present during the incident, I will take plaintiff at his word regarding his earlier declaration, made under penalty of perjury. Dkt. 84. This is supported by the fact that the staff members named by plaintiff as the Does in his declaration almost completely overlap with the staff listed as present in the prison incident report attached by plaintiff. Dkt. 84-1, at 9. Otherwise, to the extent plaintiff seeks discovery of the video, he should make a request to defendants, and if necessary, follow up with a motion to compel.

4

B.    Screening second amended complaint

    1.    Excessive force/infliction of humiliation

Plaintiff is already proceeding on excessive force claims against defendants Mason, Flannery, Godfrey, Parr, Gallinger, Esser, Primmer, and John Doe officers for two 2013 incidents in which they "beat[] him, us[ed] a stun gun on him for no reason and perform[ed] anal searches on plaintiff solely to humiliate him." Dkt. 23, at 11. Mason, Flannery, Godfrey, Parr, and Gallinger were involved in the July 25, 2013 incident, and Esser, Primmer, and John Doe officers (now identified as defendants Gage, Winger, Foley, Torgerson, and Runice) were involved in the August 12, 2013 incident. Upon reviewing the allegations in plaintiff's second amended complaint, I conclude that plaintiff states additional claims regarding the two incidents.

In particular, plaintiff states that during both incidents, defendants cut off his clothes and conducted "anal searches" on him to humiliate him. A strip search violates the Eighth Amendment when it is conducted in a harassing manner with the intent to humiliate and inflict psychological pain rather than for legitimate prison purposes. *Hamlin v. Holmes*, 13-cv-202-bbc, Dkt. 10 at 7-9. (W.D. Wis. May 1, 2013). At this point, plaintiff's allegations are sufficient to support claims regarding both the decision to subject him to such an invasive search and the manner in which the search itself was executed. *See id*. at 8 ("Stated another way, the question is whether there was any legitimate penological reason for both the search and its scope."); *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007) (granting leave to proceed on manual strip search where officers did not give plaintiff opportunity to consent to visual search and no allegations indicate legitimate reason preventing visual inspection).

Similarly, plaintiff states an Eighth Amendment claim against defendants Esser, Primmer, Gage, Winger, Foley, Torgerson, and Runice, whom he states on August 12, 2013,

5

"forced [him] to crawl into [his] cell or be shot," because I can infer that defendants intentionally humiliated plaintiff by forcing him to demean himself.

It is important to note that screening the allegations in plaintiff's second amended complaint is not the final step in determining whether plaintiff will be allowed to proceed with his various claims going forward. As discussed in further detail below, I will grant defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies with regard to the July 25, 2013 excessive force claims. This means that even though his second amended complaint states excessive force claims against defendants Mason, Flannery, Godfrey, Parr, and Gallinger for their actions during the July 25, 2013 incident, those claims will be dismissed from the case without prejudice. *See infra*, at 15-16.

### 2.   Failure to protect

Plaintiff is already proceeding on Eighth Amendment failure to protect claims against defendants Parr, Gallinger, Godfrey, Esser, and John Doe officers (now identified as defendants Foley, Sherman, Cockcroft, Wallace, Scullion, Weigel, and Kersten) for making ongoing threats of harm to plaintiff. Plaintiff now alleges that newly named defendant correctional officer Thomas Belz joined these other defendants in threatening him. I will allow him to proceed on his claim against Belz.

Construing plaintiff's amended complaint generously, I understand him to also be alleging that newly named defendant complaint examiners Ellen Ray and William Brown ignored his complaints about the use of force and threats against him, so I will allow him to proceed on failure to protect claims against these defendants. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("One can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint

6

examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability.").

### 3.    Restraint and use of force policy

The bulk of plaintiff's new allegations concerns a "security precaution restraint policy" he was placed on by defendant Jerry Sweeney, the WSPF security director. I understand plaintiff to be saying that the two alleged attacks by correctional officers discussed above were at least in part authorized under this policy.

In his complaint, plaintiff does not explain the exact contours of this policy, but states that it was "proscribed by [Wis. Admin. Code §§] DOC 306.07(2)(g) and 306.09(3)(g) by 4 man total with electronic Taser device and mechanical restraints . . . for all responses without regard for the need to apply force or amount of force required to restore discipline." Dkt. 32, at 4.

I understand plaintiff to be attempting to bring due process claims for regular use of restraints "for all responses" by correctional officers and excessive force claims for the policy's authorization of the use of force via stun gun no matter whether plaintiff is actually failing to comply with officers.

Plaintiff has no possible constitutional claim regarding the use of a four-person response team or the use of restraints "for all responses," because there is nothing in plaintiff's allegations of added security measures that rises to a potential constitutional violation. Even construing his allegations generously, he has not alleged a significant deprivation of liberty. *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002) ("The added restraints of a waist belt and leg chains are not "atypical" and "significant" hardships in relation to Thielman's confinement.").

As for the excessive force claim, the administrative code provisions cited by plaintiff are somewhat open-ended. Wis. Admin. Code § DOC 306.07 is titled "use of force." Subsection (2)

states in relevant part: "Staff may use non-deadly force against inmates only if the user of force reasonably believes it is immediately necessary to realize one of the following purposes: . . . (g) To enforce a departmental rule, a policy or procedure or an order of a staff member." Section 306.09 is titled "use of incapacitating agents." Subsection (3) states in relevant part: "Staff may use incapacitating agents in any of the following situations: . . . (g) To enforce a departmental rule, policy or procedure or an order of a staff member." Plaintiff seems to be arguing that these provisions allow the use of force or incapacitating agents any time a prisoner fails to follow a rule or an official's order, no matter how minor that failure is, and thus the policy applied to him by defendant Sweeney led to him being tased during both of the incidents discussed above even though there was no need to use that amount of force. Plaintiff is correct that, at least on the face of these regulations, there is no mention of whether the use of force must be related to the need for its use or the extent of the threat faced by prison officials, which informs part of an excessive force analysis. *See* Dkt. 23, at 6-7.

The question whether plaintiff states a viable excessive force claim regarding the policy based solely on the vague allegations in the complaint and the statues cited by plaintiff is a close call. However, in briefing his motion for preliminary injunctive relief, plaintiff further details his claim by providing a copy of the "security precaution restraint policy." Dkt. 84-1, at 3-5. This policy describes extra security precautions to be taken when transporting plaintiff, including how plaintiff should present himself to staff for the placement of hand and leg restraints, and that a security supervisor would be present with a stun gun. *Id.* The statement does *not* contain any provision suggesting that the use of force, including the use of the stun gun, is somehow more warranted against plaintiff based on his placement under the policy. *Id.* In short, there is nothing in this policy encouraging prison staff to use the stun gun or beat and strip search plaintiff.

8

In the court's original screening order, Judge Crabb warned plaintiff about bringing

claims that he could not prove at the preliminary injunction phase:

Finally, I warn plaintiff about the ramifications facing litigants who abuse the imminent danger exception to their three-strike status. The only reason that plaintiff has been allowed to proceed *in forma pauperis* in this case is that his allegations suggest that he was under imminent danger of serious physical injury at the time that he filed his complaint. The "imminent danger" exception under 28 U.S.C. § 1915(g) is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). In certain cases it may become clear from the preliminary injunction proceedings that a plaintiff who has already received three strikes under § 1915(g) for bringing frivolous claims has exaggerated or even fabricated the existence of a genuine emergency in order to circumvent the three-strikes bar. I am particularly aware of this possibility in this case given the similarities between plaintiff's current allegations and those he has raised in previous cases in this court. If plaintiff again proves unable to support his claims with evidence, I may revoke the court's grant of leave to proceed *in forma pauperis* or put in place further filing bars as a sanction against plaintiff.

Dkt. 23, at 10-11.

Because plaintiff's preliminary injunction briefing makes clear that defendant Sweeney

did not do anything to authorize or condone other defendants' alleged excessive force by placing

him under the "security precaution restraint policy," there is no reason to allow plaintiff to

proceed on an excessive force claim against Sweeney or any of the other government officials he

names as approving or condoning the policy, Governor Scott Walker, Warden Gary Boughton,

and Division of Adult Institution Administrator Cathy Jess.

## C.   Exhaustion

Defendants have filed a motion for partial summary judgment based on plaintiff's failure

to exhaust his excessive force claims regarding the July 25, 2013 incident. Plaintiff initially

responded by filing a motion to stay the briefing schedule and two motions to extend his

response deadline, arguing that prison officials were keeping him from the law library.

Defendants opposed plaintiff's motions, arguing that plaintiff has forfeited some of his library

time because he threatened staff who arrived to escort him and, in any case, indeed received some library time. There is no need to conduct a hearing over plaintiff's library access because he ultimately provided his summary judgment response about ten days after the original deadline. In light of plaintiff's status as a pro se prisoner, I will grant his motion for an extension of time and consider his response to be timely filed.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "applies to all inmate suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of administrative exhaustion is not to protect the rights of officers, but to give prison officials a chance to resolve the complaint without judicial intervention. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537–38 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation").

Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. However, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because exhaustion is an affirmative defense, defendant bears the burden of establishing that a plaintiff failed to exhaust his available remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

It is undisputed that after the July 25, 2013 incident, plaintiff filed inmate grievance no. WSPF-2013-14786 through the Inmate Complaint Review System (ICRS), alleging that correctional officers used excessive force against him. Defendant Institution Complaint Examiner Ellen Ray responded to that grievance by sending a letter to plaintiff stating in relevant part:

> In this complaint you allege staff misconduct. The ICE cannot investigate such allegations. Therefore, if you wish to proceed with this complaint, you will need to submit a statement outside of the ICRS and it will be investigated by a Security Supervisor.
>
> If you choose to do this, please complete the statement on the enclosed paper, sign and date it and return it to this office by 8-12-13.

Dkt. 77-1, at 2. According to Ray, plaintiff did not respond to this letter (as discussed below, plaintiff disputes this assertion). Her formal response to plaintiff's grievance stated as follows:

> DAI Policy and Procedure #310.00.01 states in part, "When an ICE receives a complaint alleging staff misconduct of a non-sexual nature, the inmate must be interviewed as soon as possible. At the interview the inmate will be advised of the provisions of DOC 303.271 (lying About Staff). If the inmate wishes to proceed with the complaint, an in-depth interview must follow,

resulting in a detailed written statement signed by the inmate. Refusal of the interview, refusal to provide details or refusal to sign the statement shall result in dismissal of the complaint for failure to cooperate."

    The ICE sent inmate Simpson a memo on 7-29-13. He did not wish to complete a statement.

Dkt. 61-3. Warden Tim Haines, the ICRS "reviewing authority," agreed with Ray's recommendation and dismissed the grievance. Plaintiff did not appeal the dismissal.

Plaintiff was also given conduct report no. 2356076 for breaking his television and a cell window, and for threatening prison staff. Plaintiff did not attend the disciplinary hearing, at which he was found guilty of threats, disobeying orders, and damage or alteration of property, nor did he appeal the disciplinary decision to the warden.

Defendants argue that because Wis. Admin. Code § DOC 310.08 requires prisoners complaining about issues relating to a conduct report to raise those issues during the disciplinary hearing itself rather than in the usual inmate grievance system, he failed to exhaust his administrative remedies regarding the July 25, 2013 incident.[3] In the alternative, they argue that plaintiff failed to exhaust even the ICRS portion of the proceedings.

Plaintiff argues that the reason he did not attend the disciplinary proceeding was that Ray's response to his grievance instructed him to complete a statement "outside of the ICRS" for review by a security supervisor. Plaintiff further argues that, contrary to Ray's assertion, he did properly respond to her request for a statement by sending a statement both to her and to

---

[3] Wis. Admin. Code § DOC 310.08(2) states in relevant part that "[a]n inmate may not use the [Inmate Complaint Review System] to raise . . . [a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Section § DOC 310.08(3) states that an inmate may use the Inmate Complaint Review System to "challenge only the procedure used in . . . the disciplinary process," but plaintiff is not arguing that the grievance he filed through the ICRS process was about the procedure of his disciplinary proceedings.

defendant Jess, the Division of Adult Institution administrator. Plaintiff includes Jess's response

in his summary judgment materials. Jess responded as follows:

> Your allegation that staff at the WSPF assaulted you has been reviewed.
> There is no evidence to suggest you were attacked and assaulted. The incident in
> which you speak of was videotaped and incident reports were written by staff
> concerning your behavior at the time of this incident. In addition, a Use of Force
> review was completed by trained staff who determined this incident to be a
> proper use of force due to your disruptive behavior, which included you breaking
> out a cell window and smashing a state issued television. You also refused to
> cooperate with Supervisors when they tried to move you from the damaged cell.

* * *

> I trust this will address your concerns.

Dkt. 77-1, at 3. Plaintiff states that he did not complete the process for his ICRS grievance

because "ICE Ray instructed plaintiff that the ICRS is not an available remedy to the

investigative grievances of staff misconduct, assault." Dkt. 75, at 3. Thus I understand plaintiff

to be arguing that administrative remedies were not available to him because staff misinformed

him about the steps he needed to take to do so.

"Prison officials may not take unfair advantage of the exhaustion requirement . . . and a

remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance

or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*,

438 F.3d 804 at 809 (7th Cir. 2006). Although there is good reason for prisoners (and this

court) to remain confused about the intersection of the DOC's disciplinary proceedings, ICRS

process, and DAI Policy and Procedure #310.00.01, and how to properly exhaust administrative

remedies in situations in which prison officials invoke these various tracks, prisoners are still

required to attempt to follow administrative rules and the directions of prison staff. On the facts

in the record, there is no reason to conclude that defendants used misconduct to prevent

plaintiff's exhaustion efforts.

13

To start with, because Wis. Admin. Code § DOC 310.08 requires prisoners complaining about issues relating to a conduct report to raise those issues during the disciplinary hearing, plaintiff's failure to do so creates a failure to exhaust administrative remedies unless he could show that prison officials misled him about the process. I understand plaintiff to be arguing that ICE Ray's response to his grievance served to mislead him because it gave his instructions on how to pursue his grievance rather than stating outright that he could not bring an ICRS grievance about a disciplinary issue. Even assuming that this oversight by Ray would excuse plaintiff from exhausting the disciplinary process, he would still have to exhaust the ICRS process.

Plaintiff responds to his failure to exhaust the ICRS process by first stating that he did in fact respond to Ray's request for an "outside statement." To the extent that this is a disputed issue of fact, I must credit plaintiff's statement that he complied with Ray's directive. But even if his grievance was dismissed for an incorrect reason, plaintiff would be required to appeal the dismissal. Plaintiff attempts to argue that Ray misled him about the availability of the ICRS process because she "instructed plaintiff that the ICRS is not an available remedy to the investigative grievances of staff misconduct, assault."

However, this is not a reasonable interpretation of the events at issue. Although the intersection of the ICRS process and DAI Policy and Procedure #310.00.01 remains unexplained by defendants, the facts of this case differ from a recent case in which I found that the state failed to prove exhaustion because a prisoner's grievances appeared to be handled under a parallel process under the DAI procedure. *Naseer v. Belz*, No. 13-CV-821-JDP, 2015 WL 519760, at *2 (W.D. Wis. Feb. 9, 2015) ("it is difficult to see why the ICRS process is relevant to plaintiff's exhaustion. The ICRS examiners themselves concluded that plaintiffs' grievance should not be considered within the ICRS framework. Rather, the grievance was addressed 'in a

14

manner similar to DAI Policy 310.00.01'"). In the present case, Ray instructed plaintiff that "[t]he ICE cannot investigate such allegations," required plaintiff to submit to Ray a "statement outside of the ICRS" to Ray's office, and then dismissed plaintiff's grievance for his failure to submit that statement, not because his grievance did not belong in the ICRS system itself or that it was already being handled in a parallel DAI proceeding. Plaintiff was given an explicit instruction that he could appeal the dismissal, yet he chose not to do so.

Plaintiff also argues that he followed Ray's instructions by sending a copy of his "outside statement" to Jess, but this is not what Ray's instructions said. Plaintiff was directed to return his statement "to this office," meaning Ray's office. Thus, Jess's response is irrelevant for purposes of the administrative grievance process. Any confusion on plaintiff's part about whether the letter to Jess served to exhaust is plaintiff's responsibility for misreading the instructions, not Ray's.

Although Ray's instructions to plaintiff do not provide perfect clarity about how the grievance process would have continued after he submitted his "outside statement," the instructions did not mislead plaintiff to thinking that his complaint was actually being processed in some parallel proceeding. Rather, the only reasonable interpretation of the record is that plaintiff's grievance was dismissed in the ICRS system, rightly or wrongly, for his failure to submit an "outside statement" to Ray, and the next step in this process would have been to file an appeal. Even assuming that plaintiff's failure to pursue the disciplinary process is excused, plaintiff's failure to file an appeal in the ICRS process means that he failed to exhaust his administrative remedies.

I will therefore grant defendants' motion for partial summary judgment on plaintiff's excessive force claims against defendants Mason, Flannery, Godfrey, Parr, and Gallinger for their actions during the July 25, 2013 incident. Those claims will be dismissed without prejudice. *Ford*

15

*v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

The leaves the question how to handle plaintiff's strip search claims regarding the July 25, 2013 incident. Although defendants' exhaustion motion did not explicitly cover this claim (because plaintiff had not yet been allowed to proceed on it), it appears that plaintiff filed no other grievances about this incident, so his failure to exhaust his excessive force claim almost certainly means that he has also failed to exhaust the strip search claim. Before formally dismissing the strip search claim, however, I will give plaintiff a short deadline to object to this conclusion and explain, with supporting evidence, how he has exhausted the July 25, 2013 strip search claim.

### D.    Motion for sanctions

Plaintiff has filed a "Motion to Sanction Defendants Attorney for Bad Faith Conduct," Dkt. 64. Plaintiff asks for defendants' counsel to be sanctioned for responding to plaintiff's request for admission that defendant Warden Boughton did not file his oath of office under Wisconsin law by stating that he had in fact done so properly. Dkt. 66-1. Defendants' suggestion that this issue is irrelevant is correct, because the warden's oath has nothing to do with whether any of the defendants in this case have violated plaintiff's constitutional rights. In any event, there is no reason to sanction defendants' counsel for responding to a discovery request by answering the question asked, even if plaintiff believes defendants' position on the legal question regarding the oath of office is incorrect. Finally, plaintiff's theory about prison wardens' oaths of office has already been rejected as meritless. *See Simpson v. Wisconsin Dep't of Corr.*, No. 14-C-197, slip op. at 4 (Mar. 17, 2014) ("even if Simpson is correct that Warden Haines has not properly filed his oath of office, Haines' actions as warden are not rendered

16

invalid as a result. The acts of an officer who failed to file an oath of office required by law is a *de facto* officer, and a de facto officer's acts are valid.").

Plaintiffs' motion will be denied. Similarly, I will deny plaintiff's motion to strike the document purporting to be defendant Boughton's oath of office. Dkt. 65.

**E.     Preliminary injunctive relief**

Plaintiff has filed a motion for preliminary injunctive relief asking for four separate types of relief:

- An "order prohibiting the state practice of making de facto officers acts valid in the immediate future";

- An "order prohibiting the enforcement of DOC rules 306.07(2)(g), 306.09(3)(g), 306.17(2)(A)(C)(5) and WSPF 3 man escort with taser and supervisor security precaution policy";

- An "order prohibiting Gary Boughton, Shawn Gallinger, Sarah Mason, Darryl Flannery, Dane Esser, Thomas Belz, Jason Godfrey, Travis Parr, Chad Winger, Wayne Primmer, Theran Cage, Christopher Foley, Lucas Runice from having any contact, direct, or indirect with plaintiff, in the immediate future"; and

- Order Governor of Wisconsin and Defendants to transfer plaintiff to another institution immediately.

The first two of these requests will be denied for reasons discussed earlier in this opinion. The issue of defendants' oaths of office is irrelevant to whether any of them violated plaintiff's constitutional rights by using excessive force, unreasonably strip searching him, threatening him, or humiliating him. Also, I have already concluded that plaintiff cannot maintain due process or excessive force claims about the security policy plaintiff was placed under, so there is no reason to consider injunctive relief for those claims.

I understand plaintiff's third and fourth requests to concern plaintiff's allegations that staff at the Wisconsin Secure Program Facility openly threatened to beat him, use a stun gun unnecessarily against him, and even kill him. Defendants argue that plaintiff's transfer to the

17

Waupun Correctional Institution moots his requests. In filing a motion for leave to file a reply brief, plaintiff argues that he "may be transferred back to WSPF to face the same injury/danger." Dkt. 92, at 1.

Usually, "when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). However, a claim may not be mooted if the prisoner can show "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here." *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Given WSPF's role as a facility for inmates with behavioral problems, coupled with allegations in both the present case and past litigation in this court that plaintiff is a security risk, it seems possible that plaintiff could indeed find himself back at WSPF in short order. I will grant plaintiff's motion to file a reply brief to give him a chance to explain why he thinks he will end up back at WSPF. Defendants will be given a chance to respond.

## F.     Sealing medical records

Shortly after the court issued its original screening order, plaintiff filed a motion to "seal [his] medical records in this case." Dkt. 33. Defendants stated that they did not oppose the motion, and that if permitted by the court, they would file under seal any medical records they filed. Dkt. 35. In a June 9, 2014 order, Magistrate Judge Crocker concluded that he could not rule on the motion without plaintiff explaining in more detail what he wanted the court to do:

> Perhaps [plaintiff] is just asking what defendants understand him to be asking: for the court to order his medical records to be sealed as they are submitted the court. But plaintiff does not explain what medical records he thinks will be submitted or how they might pertain to his claims. In addition, plaintiff states that he has a "right to privilege" under the Health Insurance Portability and Accountability Act and that the Wisconsin Department of Corrections has "adopted the HIPAA privacy rule." Although this is unclear, it sounds like

plaintiff might have concerns about the discovery process itself and how and to whom defendants might disclose his medical information. Moreover, the court is aware that the state usually asks for authorization from a prisoner before obtaining his medical file, but it is unclear whether plaintiff is attempting to raise any authorization issues in his motion or seek a protective order clarifying how defendants may use this information.

Dkt. 36, at 1-2. Judge Crocker requested supplemental briefing on the issue. *Id.* at 2.

Plaintiff was granted two extensions of time and ultimately filed his supplemental briefing, Dkt. 54, 58, only after asking for a third extension of time, Dkt. 52. Because it does not prejudice defendants, I will grant the request for a third extension of time and consider his supplemental brief.

Plaintiff now clarifies that he "does not seek to prevent defendants from using any of [his] medical records in this case . . . relevant to defend against plaintiff['s] allegations of physical/emotional harm" but states that he "seek[s] an order to seal his medical records . . . which are to be filed with the court and any medical records not necessary to defend against my allegations to prevent disclosure + use outside the scope of which the signed authorization is limited to." Dkt. 58, at 3. He also states that he "do[es] not want [his] medical records to be disclosed outside of this case . . . and wind up on TV for discussion or on Internet or for personal use."

Plaintiff's response is still not crystal clear, but I understand him to be raising two separate requests: (1) for his medical records submitted to this court to be sealed; and (2) for defendants or their lawyers not to disclose his medical information for any reason other than this litigation. As far as the court record is concerned, I will not grant a blanket seal to all of plaintiff's medical records regardless of how they are used in public court proceedings. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). ("The determination of good cause [under Fed. R. Civ. P. 26(c)] cannot be elided by allowing

the parties to seal whatever they want."). Instead, I will follow the example of the Eastern

District of Wisconsin:

> I recognize plaintiff's concerns regarding the availability of his sensitive medical and mental health information in a public forum. I conclude that there is good cause to place plaintiff's certified medical records under seal, but the good cause does not extend to those portions of the records so relevant to plaintiff's claim that they have been cited or quoted by the parties or the court in other documents. Therefore, I will fashion a hybrid remedy. To the extent that information from the medical records is incorporated into other documents filed by the parties or orders issued by this court, that information will remain visible to the public. I will place the source documents themselves under seal, though.

*Chapman v. Raemisch*, No. 05-C-1254, 2009 WL 425813, at \*7 (E.D. Wis. Feb. 20, 2009).

Accordingly, the parties shall submit plaintiff's medical records under seal, but they are free to

quote and cite to *relevant* medical information in filings or at trial. If plaintiff believes defendants

have introduced irrelevant sensitive material, he may file a motion to strike such references. On

the other hand, either party or any interested member of the public may move to unseal any

portion of a sealed filing in this case.

Plaintiff should understand that when he filed this lawsuit, he gave up his right to keep

relevant medical information used to litigate this action private. He, of course, remains free to

dismiss the lawsuit if he would rather keep relevant medical information out of the public

record.[4]

As for defendants' use of plaintiff's medical records outside of the lawsuit, I understand

plaintiff to be asking for a protective order. At present, I am unaware of the precise wording of

the medical record authorization form that plaintiff has already submitted to defendants, so I do

not know whether defendants have already agreed to limit re-disclosure of information in any

way. I will give defendants a short time to respond to this order, explaining whether they have

---

[4] Plaintiff should also consider that medical information he might consider sensitive may already be part of the public record from his previous litigation in this and other courts.

already agreed to limits on re-disclosure or, alternatively, whether they would be willing to stipulate to a protective order regarding plaintiff's medical information. I will attach to this order an example of such an order from a previous case in this court, case no. 11-cv-443-bbc.

## G.   Motion to amend schedule

Defendants have filed a motion to extend their January 23, 2015 deadline for expert disclosures and both parties have moved to extend the February 9, 2015 dispositive motion deadline. I will grant these motions and set a new schedule as follows:

- Supplemental Disclosure of Expert Witnesses: Plaintiff: April 20, 2015
  Defendants: May 18, 2015

- Deadline for Filing Dispositive Motions: June 1, 2015

- Discovery Cutoff: October 12, 2015

- Rule 26(a)(3) Disclosures and all motions in limine: October 12, 2015
  Objections: October 26, 2015

- Final Pretrial Conference: November 9, 2015 at 8:30 a.m.
  Trial: November 9, 2015 at 9:00 a.m.

### ORDER

IT IS ORDERED that:

1. Plaintiff Willie Simpson's motion for reconsideration of the June 30, 2014 preliminary pretrial conference order, Dkt. 50, is DENIED.

2. Plaintiff's motion for an extension of time to submit an amended complaint identifying the John Doe defendants, Dkt. 57, is DENIED as unnecessary.

3. Plaintiff's motion for leave to amend his complaint, Dkt. 32, is GRANTED. Plaintiff is granted leave to proceed on the following claims:

   a. Eighth Amendment excessive force claims against defendants Dane Esser, Wayne Primmer, Theran Gage, Chad Winger, Christopher Foley, Ronald Torgerson, and Lucas Runice for beating plaintiff, using a stun gun on him for no reason, and performing an anal search on him on August 12, 2013.

21

b. Eighth Amendment strip-search claims against defendants Esser, Primmer, Gage, Winger, Foley, Torgerson, and Runice for performing an anal search of plaintiff solely to humiliate him.

c. An Eighth Amendment claim against defendants Esser, Primmer, Gage, Winger, Foley, Torgerson, and Runice for forcing plaintiff to crawl into his cell.

d. Eighth Amendment failure to protect claims against defendants Travis Parr, Shawn Gallinger, C.O. Godfrey, Esser, Thomas Belz, Foley, Michael Sherman, Michael Cockcroft, Leverne Wallace, Mathew Scullion, Keith Weigel, and CO Kersten for threatening harm to plaintiff, and against defendants Ellen Ray and William Brown for ignoring his complaints.

4. Defendants Gage, Winger, Foley, Torgerson, Runice, Belz, Sherman, Cockcroft, Wallace, Scullion, Weigel, Kersten, Ray, and Brown are added to the caption of this case.

5. The state may have 21 days to file an answer to the amended complaint for all defendants it chooses to represent.

6. Plaintiff's motion for extension of time to file his response to defendants' motion for partial summary judgment, Dkt. 71, is GRANTED. Plaintiff's motion to stay the briefing schedule on defendants' exhaustion motion, Dkt. 63, and second motion for an extension of his response deadline, Dkt. 73, are DENIED as moot.

7. Defendants' motion for partial summary judgment based on plaintiff's failure to properly exhaust his administrative remedies, Dkt. 59, is GRANTED. Plaintiff's excessive force claims against defendants Mason, Flannery, Godfrey, Parr, and Gallinger for their actions during the July 25, 2013 incident are DISMISSED without prejudice.

8. Plaintiff may have until April 10, 2015, to show cause why his strip search claims regarding the July 25, 2013 incident should not also be dismissed for failure to exhaust administrative remedies.

9. Plaintiff's motions to sanction defendants' counsel, Dkt. 64, and to strike, Dkt. 65, are DENIED.

10. Plaintiff's motion for preliminary injunctive relief, Dkt. 81, is PARTIALLY DENIED. Plaintiff's motion to file a reply brief, Dkt. 92, is GRANTED. Plaintiff may have until April 10, 2015, to explain why he faces a realistic possibility of being transferred back to WSPF. Defendants may have until April 20, 2015, to file a sur-reply.

11. Plaintiff's motion for extension of time to file supplemental briefing regarding his motion to seal documents, Dkt. 52, is GRANTED.

22

12.   Plaintiff's motions to seal his medical records, Dkt. 33, 54, are GRANTED in part. Either party submitting plaintiff's medical records must do so under seal in accordance with the discussion above. Defendants may have until April 10, 2015, to respond to this order regarding the re-disclosure of plaintiff's medical information.

13.   The parties' motions to amend the schedule in this case, Dkt. 94, 96, are GRANTED. The schedule is amended as discussed above.

Entered March 30, 2015.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge

23