IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WILLIE SIMPSON,

                        Plaintiff,

        v.

DANE ESSER, SHAWN GALLINGER,
JASON GODFREY, TRAVIS PARR,                                ORDER
WAYNE PRIMMER, THERAN GAGE,
CHAD WINGER, CHRISTOPHER FOLEY,                            13-cv-776-jdp
LUCAS RUNICE, THOMAS BELZ,
MICHAEL SHERMAN, MICHAEL COCKCROFT,
LEVERNE WALLACE, MATHEW SCULLION,
KEITH WEIGEL, and PAUL KERSTEN,

                        Defendants.

Plaintiff Willie Simpson proceeded to trial in January 2016 on the following claims: defendants (1) used excessive force against plaintiff by tasing him; (2) chose to conduct a staff-assisted strip search of plaintiff for the purpose of humiliating him; (3) forced plaintiff to crawl into his cell for the purpose of humiliating him; and (4) threatened to harm and kill him. The jury found in defendants' favor on each of these claims.

Plaintiff orally submitted a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) during the trial and renewed that motion under Rule 50(b) following the verdict. Plaintiff confirmed with a written motion, Dkt. 204, and supporting brief, Dkt. 205. After considering his briefing, I will deny the motion.

The main thrust of plaintiff's motion is that the jury found for defendants on the strip search, crawling-into-cell, and threat claims only because I gave the jury improper

instructions.[1] Plaintiff contends that those claims should have been characterized as

"excessive force" claims, and the jury was not instructed on factors traditionally examined to

determine whether a defendant's actions were "wanton" under an excessive force theory.

Plaintiff cites five factors commonly used in excessive force cases to determine whether a

defendant used "extreme or excessive cruelty":

- the need to use force;

- the relationship between the need to use force and the amount of force used;

- the extent of Plaintiff's injury;

- whether Defendant reasonably believed there was a threat to the safety of staff or prisoners;

- any efforts made by Defendant to limit the amount of force used.

Federal Civil Jury Instructions of the Seventh Circuit § 7.15; *see also Hudson v. McMillian*, 503

U.S. 1, 7 (1992). I included these factors in the instruction for the tasering claim but did not

on the other three claims. Plaintiff accurately states that he asked for these factors to be

added to the instructions for these claims, but I denied his request. Plaintiff contends that

"[c]onsequently the jury rendered an easy verdict against plaintiff inconsistent with law with

respect to the claims plaintiff seeks judgment on." Dkt. 205, at 5.

The court is not required to give an "idealized set of perfect jury instructions," but the

instructions must be legally correct and supported by the evidence. *Byrd v. Illinois Dep't. of*

*Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005). To obtain a new trial based on erroneous

---

[1] Although plaintiff's motion is styled as one for judgment as a matter of law under Rule 50, the jury instruction argument is better characterized as a motion for new trial under Federal Rule of Civil Procedure 59.

jury instructions, plaintiff must establish that (1) the instructions did not adequately state the law, and (2) the error was prejudicial because the instructions confused or misled the jury. *Id.*; *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004). Plaintiff fails to make these showings.

First, although plaintiff characterizes the strip search claim as an excessive force claim, the facts at issue in this case do not fit an excessive force theory. In some circumstances, a strip search might involve rough conduct analogous to excessive force, but that was not the case here. At the summary judgment stage, I specifically concluded that this claim was not about the *manner* in which the strip search was performed:

> Based on plaintiff's deposition testimony, no reasonable jury could conclude that defendants "fondled" his buttocks or testicles as that term is defined by the dictionary. Rather, plaintiff is saying that defendants touched him in an unwanted manner by lifting his testicles and spreading his buttocks. While forcibly lifting a man's testicles and spreading his buttocks would be sexual assault in the outside world, it is part and parcel of a staff-assisted strip search serving the legitimate penological purpose of keeping the prison secure by ensuring that no prisoner transports contraband. Plaintiff seems to equate any unwanted touching with sexual assault but this is simply not the standard for prison strip searches. Nor does plaintiff describe any harassing, humiliating, or demeaning comments or behavior on the part of any prison staff during the search that might create an inference that particular techniques used during this search were done to humiliate him. Therefore, I conclude that no reasonable jury could conclude that the manner in the strip search was conducted, as opposed to the decision to conduct the staff-assisted search in the first place, violated plaintiff's Eighth Amendment rights.

Dkt. 154, at 24 (citation omitted). There was no evidence that defendants acted improperly in the specific techniques they used in performing the strip search, or that they physically harmed plaintiff through the use of "force" in the context that term is usually used—taking actions that physically harm the prisoner: punching, kicking, shoving, etc. The only question

was whether they chose a specific type of strip search—a more invasive "staff assisted" search—for the purpose of humiliating plaintiff. I gave the jury the following instruction on this claim:

> The choice to perform a strip search on a prisoner does not violate the Eighth Amendment unless that choice is intended to humiliate and inflict psychological pain on the prisoner rather than intended to serve legitimate prison purposes.
>
> The court has already determined that the defendants acted properly with respect to the way they conducted the staff-assisted strip search. The only challenged action is the decision to conduct a staff-assisted search as opposed to allowing a self-performed strip search.
>
> Question No. 2 asks whether plaintiff has proven by a preponderance of the evidence that any of defendants Esser, Primmer, Gage, Winger, or Foley violated plaintiff's Eighth Amendment rights by deciding to conduct a staff-assisted strip search on August 12, 2013, or by failing to intervene in that decision.
>
> **To succeed on this claim, plaintiff must show by a preponderance of evidence that a defendant acted in a way intended to humiliate and inflict psychological pain rather than for legitimate prison purposes.**
>
> In making this determination, you must give prison officials leeway to adopt and carry out policies and practices that, in their reasonable judgment, are needed to preserve order and discipline and to maintain security in the prison.

Dkt. 194, at 6-7 (emphasis in original). This instruction properly set out the law for this type of claim. *See, e.g.*, *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). ("to state an Eighth Amendment claim Calhoun must show that the strip search in question was not merely a legitimate search . . . but instead a search conducted in a harassing manner intended to humiliate and inflict psychological pain.").

Plaintiff's challenge to the crawling-into-cell claim fails for a similar reason. That claim was not about physical pain plaintiff suffered by being forced to crawl; it was about whether defendants forced him to crawl into his cell for the purpose of humiliating him. Because this claim was so similar to the strip search claim, I gave the jury an instruction similar to the strip search instruction, and plaintiff fails to show that the instruction was in error.

Plaintiff's argument on the threat claim is more difficult to understand. I gave the following instruction on that claim:

> Verbal harassment by prison officials does not typically constitute cruel and unusual punishment that violates the Constitution. However, threatening harassment violates the Eighth Amendment when it involves a credible threat to kill or to inflict other physical injury.
>
> You will need to determine if any of defendants Esser, Foley, Parr, Gallinger, Godfrey, Belz, Sherman, Cockroft, Wallace, Scullion, Weigel, or Kersten threatened to harm or kill plaintiff and that the alleged threats were credible.
>
> Question No. 4 asks whether plaintiff has proven by a preponderance of the evidence that defendants violated plaintiffs Eighth Amendment rights by making credible threats to harm or kill plaintiff. A credible threat is a threat backed by violence.
>
> To succeed on his claim that defendants threatened to harm or kill him, plaintiff must prove each of the following things by a preponderance of the evidence:
>
> **1. Defendant intentionally made a threatening statement about harming or killing plaintiff;**
>
> **2. The threat was credible; and**
>
> **3. Defendant's statement caused harm to plaintiff.**

Dkt. 194, at 10 (emphasis in original). This instruction properly stated the law at the time of the events in question. *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009).[2]

Plaintiff seems to be under the misimpression that I had ruled as a matter of law that plaintiff's threats were credible. He states, "Even the instructions that Judge Peterson gave the jury directed the jury that the court had concluded the threats were credible and the video was proof that the threats were backed by violence . . . ." Dkt. 205, at 6. But nothing in the jury instructions suggest that I had already decided that element.

If plaintiff means to maintain his earlier argument that the *Hudson* excessive force factors should have been included in the threat instruction, he fails to show how the instruction misstated the law or confused the jury. There was no reason to include the *Hudson* factors, because the claim was primarily about *verbal* threats, and only tangentially about alleged acts of violence surrounding the threats making those threats "credible."[3]

Finally, although the main thrust of plaintiff's arguments has to do with the failure to include excessive force factors into the jury instructions, he also suggests—albeit without elaboration—that there was not sufficient evidence to support the verdicts in defendants' favor. But this amounts to nothing more than plaintiff's disagreement with defendants' version of the relevant events presented at trial. Defendants presented testimony explaining

---

[2] As I stated in the court's summary judgment opinion, the *Dobbey* requirement that a threat of violence be accompanied by a credible threat is called into question by a recent Seventh Circuit opinion, *Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015) (discussing examples of purely verbal harassment that could violate the Eighth Amendment). *See* Dkt. 154, at 26-27 n.3. But I concluded that *Beal* could not apply to the qualified immunity issue raised at summary judgment because that opinion postdated the events in question here.

[3] I note that the jury separately considered one of the alleged acts of violence, the August 12, 2013, tasering, as an excessive force claim and was instructed on the five *Hudson* factors included with the pattern excessive force instruction. But the jury found for defendants on that claim even with the *Hudson* factors included.

that all of their actions were done for legitimate prison purposes and stating that none of them threatened plaintiff. The jury's verdict could reasonably be based on that evidence, because the jury was free to find defendants' testimony more credible than plaintiff's.

ORDER

IT IS ORDERED that plaintiff Willie Simpson's motion for judgment as a matter of law and motion for new trial, Dkt. 204, is DENIED.

Entered September 12, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge